and so going to that argument we'll start with the appellant Mr. Black. Thank you may it please the court obviously I'm here first to answer your questions but to the extent you don't have any given limited time I want to remind you of core facts and then make three main points there are a bunch of claims I'm going to focus on two of them facts first I'm here to recover for my sister's trust the money that a son Pinto stole he is a crafty con man he has my sister Joanne under his sway can I in terms of answering our question sorry to jump right in but but one of the things that I've been trying to sort out in my mind is the relationship between the trust and the various claims and in particular I'm wondering whether the bank accounts are those bank accounts from which mr. Pinto allegedly withdrew money and then used for its own purposes are those bank accounts under the umbrella of the trust no but they were funded from trust money so there are two sets of funds there is money that I would send to Joanne's bank account every week that was trust money then there is her social security disability payments those were not trust money but he took those two and money is fungible so she would need support in other ways so so so let's talk about the social security that seems the most removed from the trust what would be the misappropriation of her social security disability money so the argument would be that Joanne needs support and he if he steals some of her support it's the obligation of the trust to make up for that by providing alternate support okay but the trust has to show the trust would have a claim if the alternate support was for things that weren't in fact undertaken for example or things that had been paid for in another way but but are you also a conservator I was concerned conservator at the time yes and are you now no okay so when did you stop being conservator in 2015 so after the relevant events all right and and then have you ever been guardian is there a guardian in this case um no okay and so one of the things I'm trying to figure out is it strikes me that the arguments about he took money from her bank accounts and misapplied it for his own use if the bank accounts aren't within the trust and he's not accountable to the trust for his expenditures from the bank account that strikes me as a claim that's squarely within the realm of a conservator to press I'm trying to figure out now that you're no longer the conservator whether the current conservator ought to be substituted and pursue or not pursue that claim as they see fit but I'm trying to figure out how the how the trustee of the trust has a claim for stealing from the bank account so for the money that went from the trust to chase and to Pinto I think there's no question about standing right that was money that directly went from the trust to Joanne right and we're trying to recover that for Joanne's trust for the SSDI the Social Security that didn't come from the trust so there the argument for standing would be indirect that the trustees have an obligation to burden on the trust to provide support in other ways you were suspended as trustee correct and so was your son right in 2018 in and then it went to Court of Appeals in Colorado and your suspension was upheld but his was not it was vacated is that right that's correct with the caveat that the Colorado probate court had the power to issue an emergency suspension was required to hold a hearing never held a hearing we're now five years later so my son is clearly a trustee he's a trustee right no question so once beyond that correct correct my son is a trustee and I believe that I have the power to act as a trustee maybe not to take money out of the trust but they're frozen anyway given that there was no follow-up that the court was required to follow up with a hearing didn't follow up the appellate court said you can suspend on an emergency basis but you have to follow up it's been three years there's been no follow-up so so so there was an order suspending you from that role and then your position is by operation of law that order has become defunct because there wasn't follow-up but there hasn't been an actual order from a court that says that suspension has ended by operation of law or otherwise that's your application of your understanding of the applicable law to the order suspending it yes but it's clear that Samuel black wasn't is a are you representing him I'm representing the trust I think is the way is the way I would describe it so Samuel black is the trustee of the special needs trust who's the current conservator the current conservator in Colorado is a woman named Jeanette Goodwin this is an odd proceeding because my sister was found competent in New York in 2016 and I don't know why there is still a conservatorship in Colorado in 2023 other than Colorado wants there to be there's no basis for the conservatorship to continue actually if your sister is competent in New York how she would have full standing to bring any case and capacity to bring any case against mr. Pinto for pilfering for her bank accounts or misappropriating her SSDI money wouldn't she yes she would but she is under his sway and he is persuaded her various strange things so she will bring the case there's no question she would outstanding to bring the case right I'm partly trying to figure out whether you have whether whether the trust I don't mean you as an individual but whether the special needs trust has standing vis-a-vis some of these other claims and it feels like the capacity to pursue them on her own weakens the case that the trust might somehow have standing on that so for me more than one person can have standing she can have standing to recover the money for herself right and the trustees can have standing to recover the money that was spent from the trust back into the trust so that it could be spent for her benefit before it so there's a question about her competence when she was in the hospital in 2013 in 2014 but she was found competent after she got out of the hospital in 2016 sure so look for us the summary judgment claim rests on two and one only slightly less conclusory from Joanne and our view is that those affidavits can't support summary judgment as against the extensive documentary evidence that Pinto withdrew lots and lots of money in many many small transactions which we've documented because the jury doesn't have to believe the evidence the conclusory evidence that he says he returned the money's different from returning if you withdrew it and it was spent on her behalf in a proper way then that would be one thing obviously if you kept it that's a different way different question but that's not what the documents go to the documents just go to whether it was withdrawn right there's no there's no evidence about how the money was spent correct we do not have evidence of how the money was spent what we know is that when she was in the for money no ability to spend it and he also separately billed for bringing her gifts so this warrant these weren't for small gifts for Joanne because he was spending bringing that separately billing for that separately diversity so if I understand I'm sort of trying to break it into the different pieces and tell me if you this is a fair characterization with respect to the charges for hours of services in connection to the trip to Colorado I understand your position to be on its face an invoice that charges for 153 hours of services during a period of 153 hours or that charges for 33 hours of driver is an impossibility and therefore you don't need any affirmative evidence that they didn't in fact work those hours because we can infer that on the face of the invoice is that is that your argument on the Colorado hours do I have that right yes the district court said that it was plausible possible that he billed for being on call but that's not what he said and that's not what his bill said yeah no and yeah I understand the on-call thing what I'm trying to figure out is it is in a world where somebody was billing for ditch digging it might be implausible on its face and that would be enough to sustain your burden because you guys there's a point of here you've got the burden but in the evidence that you've put into the summary judgment record that supports the inference that he was not entitled to bill for time in which she was in his care in custody but he was sleeping he didn't claim to bill for time spent sleeping he claimed to bill for time spent working did he claim that time working meant being awake in those words no okay so so you've made an inference since biased because we all were lawyers and we think of billing as being billing by the hour nowadays doing a lot by the hour and but that's not necessary other professions and other work right there may be cases where people bill for being on call certainly you know physicians are sometimes on call and get paid for being on call but I always understood that he was billing for the time he spent working not for the time that he spent on call I did not focus on the fact that he was literally at the time billing for 153 straight hours I could have been said this couldn't be possible but I just didn't focus on it at the time he traveled with her from Colorado back to Newton back to New York it took whatever time it took and I assumed that he was billing for his work time so so so the inference that I think you're making is that work excludes what travel time sleeping time all of those other things and I'm wondering whether there's any evidence in the record to support that inference that you've made so he was traveling with my sister so we're not excluding travel time okay we're not excluding eating time we're making the inference that he didn't stay awake for 153 straight hours it's not considered work time if for example your sister's in his care in custody but he's sleeping maybe he's sleeping by the door of the room I believe that's a it's a reasonable inference for the jury to draw that that was not work time that he claimed to be billing for work time not for sleep time there is also no evidence that he said I'm billing for when I was sleeping he never claimed to bill for when he was sleeping which requires a misrepresentation by him so he he has to have said I'm billing you for a wake time and and and he hasn't said that and so is there some evidence from which we can infer that his submitting a bill for 153 hours is tantamount to saying that and what I'm hearing from you is no it's it's an inference that you find reasonable but there's not some writing for example that clarifies that he's not to bill for sleeping time when people travel for work there's all sorts of different ways of describing work time right and so I just I'm trying to figure out whether there's some evidence to support your understanding of what work time meant in that context so I think it is a reasonable inference for the jury to say work time meant time actively with Joanne not time lying in a bed sleeping do you have any evidence that he wasn't with Joanne through the whole I certainly hope he wasn't sleeping in the same room with her so you don't have any evidence I would have to go back and look at the bills to see if he built for two separate hotel rooms but I don't think he had that level of detail in his bills on the bank withdrawals assuming that the trust is an appropriate party to press that claim my understanding of your argument is that we know he withdrew a lot of money how did he I don't understand there to be a claim that he came into possession of the debit card and the ability to use that through some sort of improper means it sounds like somebody well I don't know whether it was I don't know who it was but somebody afforded him that access is that is that right I have no Joanne gave him her debit cards okay so there's not a claim that he came into possession of the debit cards improperly but the claim is that he used them to withdraw money and there's no dispute that he withdrew significant sums of money the claim is that he didn't use them for her benefit and that supports various claims although there's not a breach of a duchery duty claim I guess these are these are fraud and unjust enrichment claims is that right fraud money hadn't received unjust enrichment yes okay so the evidence that you have for that is that he withdrew the money and in the adequate explanation and doc and or documentation of those use of those funds he wasn't he denied having any documentation and in a situation where you would expect somebody to keep documentation and for the Social Security payments he was required by law to have a separate bank account for Joanne to keep documentation I think the jury can and should draw an inference that the doc if he had kept documentation it would not have been favorable and why on the putting aside the Social Security because I do think that's the most distant from the trust's cognizable interests but but as to the bank withdrawals if Joanne gave him the card based on whatever agreement she had with him that he could use that money for purposes agreed upon between him and why is that a circumstance in which it would be reasonable for a jury to infer that he would have kept records of how he spent that unless there's evidence that she had an expectation communicated to him of those kinds of records so he had the debit card he withdrew money he reported some of those withdrawals to me as partial payment for him so he was clearly treating this as not you know as not money spent for her yeah and then didn't report other withdrawals but I think that the Social Security case is important even if you decide the trust doesn't have standing because it shows the extent to which he didn't keep any records at all in situations when he was supposed to and that supports an adverse inference that the money was not properly spent was he accountable to the trust was there any I'm just trying to figure out other than a subjective expectation that you may have had what's the legal basis for inferring that he had an obligation to report to the trust anything other than monies that he credited towards obligations that otherwise would have been built to the my sister spending time with my sister taking care of my sister and our view is you don't get to take more money on the side from my sister for the services that you're providing to her for which you're already being paid I don't know where it is in the record but she was declared competent in March of 2016 March of 2016 yes okay but one of the arguments you made was that the district court shouldn't believe her affidavit and her affidavit was at the end of 2018 so the argument is yeah the argument for Julian's affidavit is first with regard to whether Pinto kept the money in a safe location outside the hospital that has to be hearsay second with regard to everything that happened while she was an inpatient she wasn't competent at that time and so she can't testify today to matters as to which she was not competent to recall or keep track of at that time when she was severely paranoid and delusional so you're not complaining about the affidavit so much as what its content when it reflects the period that if to the extent that it reflects the period that prior to it being declared competent yes so I think it's conclusory and I think it speaks to times when she would not have had the ability to know what was going on and some of it is hearsay but I do not object to her competence at the time that she completed the affidavit sure so once I had a parting of the ways with mr. Pinto and started to investigate and discovered that he had withdrawn all this money from Joanne's bank accounts and discovered that the money that I thought was sitting in the social security account which was a separate account in her name wasn't there I started to investigate further as to whether he had really been visiting three times a week I asked the hospital for their visit records they could give me records only for the last three months when she was there they say they don't have any records before that so I want the jury to draw an inference that what he did during the three months that we know about is consistent with what he did before that but I have no direct evidence of the this is a you know serious lockdown inpatient psychiatric facility it's a rather large facility you come in through one door you sign in you go in they unlock a door so you can go inside yes I don't know how you would get in without signing a visitor log unless they violated their own procedures and then you sign out again on your way out as well I think the opportunity from here hear from you again and kept you a long time so thank you why don't you take a seat and we'll hear from your thank you thank you your honors Robert Fantone representing the appellees Sheree Wrigley Eason Pinto and CPI investigation I also have my co-counsel Andrew Mancia here just based on the discussion I think your honors picked up on a lot of the key points I'll just add a couple things I'll pick up on the visitor logs that we were just discussing I don't believe that the record supports the description of the lockdown facility in fact judge Ammons decision explicitly says there is an issue of fact with respect to the security and the times that Eason Pinto signed in for example Eason Pinto's deposition testimony describes several reasons why he would have entered without signing in for example he has a good relationship with the doctors and the staff there sometimes when he entered the facility he was meeting with the doctors and they would just bring him in there's other times that he testified to that he would show up out front with his family and they wouldn't all come in his deposition testimony correct he would Joanne would come outside and so forth but ultimately what the court found was that period that your honor identified during that period because these claims really are in relation to the fraud claim stemming from misrepresentations on the invoice and during the period that the visitor logs reflect mr. Pinto had switched to a flat rate billing that was issued at the beginning of each month and what the court the court did find there was an issue of fact with respect to the vis of the accuracy of the visitor logs but it was irrelevant because because it was a but but but but vis-a-vis the 2013 visits as I understand the argument yeah they don't have records for 2013 the best we can do is is extrapolate backwards from the 2014 records and and he did in fact bill retrospectively in 2013 X hours and and so if the allegation is that he billed for three visits a week but we infer backwards from the 2014 records and he wasn't in that often that would be a fraud sure but it's quite removed I mean the proof that that's that's fairly speculative especially in light of the other evidence on the record you know if you take a step back and look at what was going on Joanne miss black was in a position where she was severely ill when mr. Pinto initially entered the picture he actually has been friends with her decades they had a small break because she was experiencing such a significant illness she moved across the country both she initially consulted with an employer his I don't believe this is in the record this is my understanding she describes it briefly in her affidavit declaration but then it really just became a friendship there was long periods where there was no money exchanged and and she called Isan Pinto every day at least twice a day in fact even the times when they were apart she still called him twice a day and he would check his messages and he could tell just by the messages that she was leaving that she wasn't taking her medication it just got to a point in their relationship where he was like listen Joanne I can't be your friend anymore because you're not taking care of yourself and it was it was harming him in his life so he just had to draw a line in the sand and it was around that time that she moved to the other country he was reintroduced to the situation by Cherie Wrigley who had a chance to observe some phone records that she found of Joanne's while Joanne was missing she was trying to find Joanne so she sees these numbers that Joanne's calling every single day and she reached out and that's how she met It does strike me so Mr. Pinto's withdrawing substantial funds from her bank accounts in a context where I think it's fair to describe him as something of a fiduciary to her and there as I understand it are discovery requests for some sort of accounting for those expenditures and the responses are broad and vague I use them for her benefit right the conclusion right in the absence of any greater specificity of accounting including documentation but also just descriptive accounting for those funds in a situation where you would expect him to do that isn't a jury entitled to draw some sort of negative inference such that the absence of evidence might be enough to get Mr. Block to the jury on this well I agree with your statement generally but I think the assumption that you that you pointed to is in a situation where you expect him to do that I don't believe that's the case here I'm not going to say that there's no circumstance where a jury should be permitted to make that inference but in this case on the record since you asked I'll point to a document this is 94-1 from the trial court docket 16 CV 0 0 4 3 0 this document is cited on page 12 of the appellees brief and what it is is an 15 between Bernard Black and Pamela Kerr who was a forensic accountant investigating the matters in Colorado page 2 of the email Bernard Black specifically says I did not require Eason Pinto to provide backup for his claims on expenses so again I think universally there may be situations where I think the jury would be permitted but in this case on this record why would he have expenses when it's clear that mr. black didn't require him to do that well let's talk about the Social Security disability right there by law as representative payee he's got certain accounting obligations my understanding is that there's no evidence he hasn't been able to produce any evidence accounting with any specificity for his expenditures from those payments isn't that a place where adverse inferences might be warranted I don't believe so I mean the testimony from Eason Pinto is that he was directed by Joanne black to take the SSDI money and store it in a safe box that's explicitly described in his deposition testimony he says from day one Joanne was worried about mr. black stealing her money that was that was described in the testimony that's what happened Joanne corroborates that again I I don't I don't see I don't see that lone fact as warranting denial of the summary judgment motion if there's a safe box somewhere though who certainly be within his ability to identify where it is a safe box it's correct and so the absence of doing that doesn't support an inference that in fact maybe there's not he tried during his deposition in fact what's interesting is I mean I could talk for five hours about the things that the plaintiffs failed to do in this case I won't but they when they deposed him they didn't really question him about any of these things they did touch on the safe deposit box they just didn't really dig any deeper I believe he stated that it was his most recent recollection that it was in a storage unit eventually Joanne when she was released she took possession of it so there's not a place where he's asked where's the storage unit and he wasn't able to say was never asked that no no and I'm sure he would be more than happy to get that information from Joanne if he was asked to do that I'll just add just a couple more things and then and conclusory allegedly conclusory affidavits I don't agree with that characterization so much for miss blacks affidavit although the court explicitly in its order didn't consider that with mr. Pinto's affidavit it's it's really a supplemental affidavit he has extensive deposition testimony where plaintiffs counsel questioned him at length as well as defense counsel so it's not really fair to characterize that as conclusory because it was really just to supplement the totality of his deposition the only other point I had here is your honors talked a little bit about the invoices being facially fraudulent and you know plaintiffs entitlement to a negative inference just on the face of them the court pointed out that it creates a little bit of a what the court called a paradoxical paradoxical catch-22 because mr. black personally paid those invoices so I don't I don't see how he could have reasonably relied on these misrepresentations when as his in his position as conservator he reviewed them he saw the hours that were worked he saw it doesn't help you on the unjust anything else thank you thank you appreciate it thank you for the cash withdrawals I think they do rest on the supposition that someone who is in fact taking Joanne's money and preserving it for Joanne would keep records and again for the Social Security payments was required to keep records and did not and that's where the adverse inference comes from so can you talk a little bit about where the requests were in discovery where I can find in the record the places where you saw it either records or specification through testimony as to the disposition of those funds and and were met with sort of I don't know or I can't say or those kinds of answers so I think the record is clear that Pinto's response to discovery was to turn over nothing and can't claim he kept no records of anything okay I understand although it would be great if you could point me to the record what I have to confess one of the frustrations with the briefing in this case is that typically people will point us to the record where we can see things to support the broad assertions that they're making I say I don't have it off the top my head it would be the discovery request and the response saying there is there were no records all right so there's there's the absence of actual records and we've heard this account that okay given the concession in this email of May 15th it wouldn't be reasonable for the jury to infer that the absence of records documenting the expenditures supports a negative inference where we have an email from the trust saying I don't require that of you do you have a response to that yes that was an email with regard to his expenses for hotel and rental car and whatever that was not a response to his cash withdrawals that was a response with regard to his bills for expenses where I did not at the time require documentation because at the time I didn't suspect him of looting her bank accounts in hindsight I could have I wish I did had but but that that is a relatively small amount of money that is not the $50,000 that he took from her bank accounts that is about $8,000 that he billed for separately and I paid him for separately out of trust money I didn't know he was taking the money out of her bank accounts because that saying I don't you don't have to produce I'm not faulting you I'm just saying wasn't a possible inference that he that he would would not have to keep the records I think it is a reasonable inference for the jury to draw that given that he didn't keep records that he did not in fact and there's no evidence that he returned the money other than his conclusory statement that he did not in fact return the money that is independent of whether I demanded that he keep records of something I didn't know he was doing but you wouldn't have had authority I mean this this goes back to the trust right the trust doesn't own those bank accounts and so you wouldn't have had authority to say to him oh you need to document how you are withdrawing money using the debit card that Joanne is providing pursuant to whatever arrangement the two of you have reached you are accountable to me the trust for what you withdraw that there wouldn't have been a legal hook for you to do that so we're putting money into the Joanne's bank account he's taking money out of Joanne's bank account and he's not accounting for it what is the framework and by which you're putting money into the account you're putting money into the account to pay him or you're just putting money into the account for her use however she is fit to use it putting money into the account mostly to pay him she's in the hospital she doesn't need cash right you know she needed a little bit I don't know but she doesn't need material amounts of cash putting money into the accounts mostly to pay him so that's what's confusing me because I had the impression that he was billing invoicing the trust directly for payments that he was entitled to pursuant to whatever agreement he had with the trust and that the money that went into those accounts was something different are you saying that part of how you paid him for his invoices was by putting money in those accounts because you knew that he was withdrawing and apparently that was okay as long as he accounted for it that was okay and he did report some cash withdrawals as part of his payment and then I would pay him out of the trust for the rest he didn't report it turned out later a large number of withdrawals that he actually took but he was reporting some withdrawals as payment to him and and so I mean I could see a universe where he's reporting things that are within the scope of his contractual obligation to the trust because the trust would be entitled to know those and understand that that's coming out but that he's not reporting things that he's withdrawing pursuant to Joanne's instructions for purposes outside of the agreement with the trust why isn't that how we should understand this arrangement so the jury would be entitled not to believe that Pinto returned the money which is what he claimed and he has an obligation that's enforceable by you to return the money I'm trying to figure out you're telling us what the jury can infer the jury can draw inferences based on evidence and I'm trying to figure out what evidence I can look at in the record to tell me that when he withdraws money from that account for expenses that are outside of the scope of his contractual arrangement with the trust and our withdrawals that Joanne has asked him to make what supports the inference that he's accountable to the trust for those he is billing the trust for expenses that he claims to incur on behalf of Joanne yes there are just categories of expenses and then other things that he's not going to trust for correct got it and that tell me where I look in the record for that those would be in his bills and I'm sorry I don't have the record in my head well the bills would reflect what he was actually billing for but the bills include this amount for expenses this amount for gifts to Joanne where do I look in the record to find what the agreement was as to what he was required to bill for right all of this is governed at the overarching sense by some sort of agreement with the trust and I'm just where do I look to find that agreement there is no contract he's simply billing and he's getting paid there is no underlying contract because one was never enter into I think trouble that I'm having and I think I've already mentioned it is it sounds to me that as though this was a largely informal arrangement amongst friends and family to take care of a very sick woman who they all had a relationship with and we're now trying to look back on it as though it was a formal business arrangement and I'm having a hard time doing that, am I off base on that? So, Asan Pinto was paid perhaps foolishly $250,000 in 18 months for spending time with my sister watching over my sister that's a lot of money without the 50,000 that he also took which I didn't know about at the time if you want to call that friendship you can call it friendship I think that's right from his perspective this was dominantly a business relationship where he was extracting as much yes for mine to right he had control over my sister I had no direct access to her in the hospital and I was relying on him to see her watch her report back there was no formal contract I agree it could have been more carefully formalized and in hindsight I wish it had been but there was no contract saying I'm going to build for this this and this he just billed for what it what he billed for he billed for his expenses he billed for his time I agree what was the period of time in which the $250,000 between June of 2013 when Joanne was committed to a hospital and October of 2014 when she was released Asan Pinto had physical custody of her during April to June of 2013 we did not make claims for that period because withdrawals during that period could have been by Joanne or had her at her discretion because she was not in the hospital I was had regular weekly deposits into her bank account that I other than money that Pinto withdrew and reported to me I do for the Chase all thank you